USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/07/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Juan Puig, *on behalf of himself and others similarly situated*,

         **Plaintiff**,

-against-

City of New York, et al.,

         **Defendants**.

1:23-cv-08674 (GHW) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:**

  Defendants City of New York, Department of Education of the City of New York and NYC School Support Services, Inc. (collectively, the "Defendants") move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., to dismiss this action and compel arbitration or, in the alternative, to stay this action pending arbitration. (Defs.' 3/18/24 Not. of Mot., ECF No. 26.) For the reasons stated herein, Defendants' motion to compel arbitration is GRANTED and this action is stayed pending arbitration of Plaintiff's claims.[1]

**BACKGROUND**

  Plaintiff Juan Puig ("Plaintiff" or "Puig") has been employed as a custodian at several New York City public schools since 1999. (Am. Compl., ECF No. 25, ¶ 25.) Puig alleges that, during the

---

[1] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *McCants v. Team Elec., Inc.*, No. 19-CV-09565 (AJN) (RWL), 2021 WL 653122, at *1 n.1 (S.D.N.Y. Feb. 19, 2021) (quoting *Chen-Oster v. Goldman Sachs*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases)). Thus, the Court has issued its decision as an Opinion and Order.

course of his employment, "he always worked over – often much over – fifty (50) hours per week[,]" and that Defendants "unlawfully failed to pay [him] the proper overtime rate to which he was entitled for all of the overtime hours he worked between 2020 and 2023." (*Id*. ¶¶ 31, 36.)

Defendants entered into a Collective Bargaining Agreement (the "CBA") with Local 94-94A-94B International Union of Operating Engineers AFL-CIO ("Local 94") effective January 1, 2023 to December 31, 2026. (Am. Compl. ¶ 65; *see also* CBA, ECF No. 27-1.)[2] Local 94 entered the CBA "acting on behalf of its members and other employees for whom it is recognized as the collective bargaining agent[.]" (CBA at 1.) Puig is a member of Local 94 and is "covered by, or an intended third-party beneficiary of the [CBA] between [D]efendants and Local 94." (Am. Compl. ¶¶ 48, 66.)

On September 19, 2023, Puig telephoned his Local 94 representative, John Cancel ("Cancel"). (Am. Compl. ¶ 49.) Puig explained to Cancel the Defendants' failure to pay him overtime and told Cancel that he wanted to commence proceedings against Defendants through the Local 94 grievance and arbitration procedure described in the CBA to recoup some or all of his unpaid wages. (*Id*.) Cancel told Puig that Local 94 did not believe he was entitled to retroactive pay, and would not help him and further told Puig that he could not start a grievance and arbitration proceeding against Defendants. (*Id*. ¶ 50.) Local 94, through its authorized representative, Cancel, refused to allow Puig to file a union grievance and arbitration proceeding against Defendants, or to take any action against Defendants on Puig's behalf. (*Id*. ¶ 51.)

---

[2] The CBA was entered into between Realty Advisory Board on Labor Relations, Incorporated ("Realty Board") and Local 94. (*See* CBA at 1.) The Realty Board negotiated and entered into the CBA on behalf of Defendant NYC School Support Services, Inc. (Arbizo Decl., ECF No. 27, ¶ 4.)

On October 3, 2023, Plaintiff filed his Complaint in this action alleging collective and class action claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime compensation. (Compl., ECF No. 1, ¶¶ 48-59.) On October 24, 2023, this action was referred to the undersigned for general pretrial purposes and dispositive motions requiring a Report and Recommendation. (Order of Ref., ECF No. 9.)

On February 2, 2024, Defendants filed a letter motion for a conference to discuss their contemplated motion to compel mandatory arbitration. (*See* Defs.' 2/2/24 Ltr. Mot., ECF No. 15.) Plaintiff opposed Defendants' request. (Pl.'s 2/14/24 Opp'n Ltr., ECF No. 19.) Defendants replied. (Defs.' 2/16/24 Reply Ltr., ECF No. 20.) The Court scheduled a pre-motion conference for March 1, 2024. (2/16/24 Order, ECF No. 23.)

During the March 1, 2024 conference, Plaintiff indicated his desire to file an Amended Complaint. Thus, following the conference, the Court entered an Order granting Plaintiff leave to file an Amended Complaint. (3/1/24 Order, ECF No. 1, ¶ 1.) The Court's March 1, 2024 Order also granted Defendants leave to file a motion to compel arbitration "[i]f Defendants believe[d] that the CBA permits Plaintiff to file a grievance and arbitrate such grievance," and required Defendants to file with the Court a full and complete copy of the CBA at issue. (*Id*. ¶ 3.)

On March 1, 2024, Plaintiff filed his Amended Complaint. (*See* Am. Compl.) In his Amended Complaint, Plaintiff added a third claim for breach of the CBA. (*See id*. ¶¶ 64-69.) In the third claim, Plaintiff alleges that the CBA contains rules regarding, among other things, overtime wages, and that Local 94 breached the CBA by preventing him from utilizing and exhausting the grievance procedure set forth in the CBA. (*Id*. ¶¶ 65, 68.)

3

On March 18, 2024, Defendants filed the motion now before the Court seeking to compel arbitration and included with their motion a complete copy of the CBA. (*See* Defs.' 3/18/24 Not. of Mot.; Arbizo Decl., Ex. 1.) Defendants' motion is premised upon a provision of the CBA requiring arbitration. (*See* Defs.' 3/18/24 Mem., ECF No. 28, at 7-8.) Specifically, the CBA contains a provision entitled "Employment and Discrimination," which provides, in relevant part, as follows:

> All claims alleging illegal discrimination under any of the above authorities [referring to various federal state and city laws], as well as claims alleging violations of the federal [FLSA], the [NYLL], and any other federal, state or local wage payment statutes or regulations, shall be subject to the Agreement's grievance and arbitration procedure as the final, binding, sole and exclusive remedy for such violations, and employees covered by this Agreement shall not file suit or seek relief in any other forum.

(CBA at 59.) The CBA also contains detailed procedures for grieving and arbitrating disputes. (*See id.* at 19-21.)

On April 22, 2024, Plaintiff filed his opposition memorandum. (Pl.'s Opp'n Mem., ECF No. 31.) Plaintiff argues that the CBA's arbitration provisions are unenforceable because the CBA "does not allow an employee to commence arbitration himself if [Local 94] unilaterally denies an employee's claim, if the grievance committee fails to send a grievance to arbitration, or if the grievance committee rules against the employee." (*Id.* at 9-10.) Plaintiff further argues that if the Court were to grant Defendants' motion to compel arbitration, "the instant matter should be stayed, and not dismissed." (*Id.* at 14-15.)

On May 2, 2024, Defendants filed their reply memorandum. (Defs.' 5/2/24 Reply, ECF No. 33.) Defendants assert, among other things, that the CBA does not prohibit employees from

4

initiating a grievance and does not allow Local 94 to prevent Plaintiff from arbitrating his claims. (*Id*. at 3.)

## LEGAL STANDARDS

### I. The FAA

The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citation and quotations omitted). "Enacted to reverse centuries of judicial hostility to arbitration agreements, the FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]" *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 100 (S.D.N.Y. 2017) (quoting *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)) (cleaned up); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (citation omitted) (FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution.").

Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation and compel arbitration." *McCants*, 2021 WL 653122, at *3 (citing FAA §§ 3, 4). "The party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be

inapplicable . . . .'" *Fernandez v. Pinnacle Grp. NY LLC*, No. 21-CV-10702 (AT), 2023 WL 2525996, at *5 (S.D.N.Y. Mar. 15, 2023) (quoting *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010)).

Prior to compelling arbitration, the Court must determine two threshold issues: (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement. *See Molina v. Harvard Maint.*, No. 20-CV-10993 (LGS), 2021 WL 5281098, at *2 (S.D.N.Y. Nov. 11, 2021) (citing *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019)). Thus, the Court must determine whether an agreement to arbitrate exists between the parties and, if so, whether the dispute at issue falls within the scope of that agreement. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017).

"In deciding a motion to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179-80 (2d Cir. 2021) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). "Courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *Id.* (internal citation, quotation marks and alterations omitted); *see also Fernandez*, 2023 WL 2525996, at *5 ("When considering a motion to compel [arbitration], courts may consider materials outside the complaint, including the parties' CBAs.").

II.     **Arbitration Of Federal Statutory (Including FLSA) Claims**

"FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (quoting *Brooklyn*

6

*Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). However, federal statutory claims, like FLSA claims, "may be made subject to arbitration[,]" *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 83 (2d Cir. 2016), "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum."[3] *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (citations and internal quotation marks omitted); *accord Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)) ("A federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'").

## ANALYSIS

Local 94 entered into a valid arbitration agreement with Defendants, Plaintiff's FLSA and NYLL claims fall within its scope and Plaintiff is bound by that agreement. Thus, as explained below, Defendants' motion to compel arbitration is GRANTED.

In the present case, the inclusion of FLSA and NYLL claims in the arbitration provision of the CBA is "clear and unmistakable." *See Lawrence*, 841 F.3d at 82. The CBA expressly provides that "[a]ll claims alleging violations of the [FLSA and the NYLL] shall be subject to the [CBA]'s

---

[3] As the Supreme Court explained in a case decided after *Barrentine*, the Supreme Court in *Barrentine* held that an employee's unsuccessful arbitration under the provisions of his union's collective bargaining agreement "did not preclude [a] federal lawsuit" in circumstances where the "arbitration provision under review . . . did not expressly reference the statutory claim at issue." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 (2009) (citing *Barrentine*, 450 U.S., at 731, n.5). Since the employees in *Barrentine* "had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions." *Id*. at 264 (internal citation omitted). Where, however, the arbitration provision expressly covers statutory claims, the provision is enforceable. *See id*. at 264, 274.

grievance and arbitration procedure as the final, binding, sole and exclusive remedy for such violations, and employees covered by this Agreement shall not file suit or seek relief in any other forum." (CBA at 59.) In *Chung v. Madison Avenue LLC*, No. 21-CV-03861 (LJL), 2021 WL 4710483 (S.D.N.Y. Oct. 7, 2021), Judge Liman held that an earlier version of the CBA in this case, which contained identical language,[4] was "'clear and unmistakable' that it cover[ed] Plaintiff's statutory claims" under the FLSA and the NYLL. *See id*. at *4 (quoting *Lawrence*, 841 F.3d at 82). Because there is a valid and enforceable agreement to arbitrate between Plaintiff and Defendants and Plaintiff's claims are covered by that agreement, the Court hereby compels arbitration.

Plaintiff admits that he is "a person covered by, or an intended third-party beneficiary of, the [CBA]." (Am. Compl. ¶ 66.) However, in an effort to avoid arbitration of his FLSA and NYLL claims, Plaintiff argues that the "CBA's arbitration provision is unenforceable" because the CBA "did not provide [P]laintiff with the option of commencing arbitration after his union representative declined his request to file a grievance, leaving plaintiff with no recourse." (Pl.'s Opp'n Mem. at 8.) Plaintiff's argument is misplaced because the CBA on its face does not prohibit Plaintiff from commencing arbitration on an individual basis and Plaintiff failed to comply with the CBA's prescribed grievance and arbitration provisions.

The CBA states that "[a]ny grievance or dispute arising out of the interpretation, performance or applicability of any term or provision of this agreement shall be submitted to a Grievance Committee, in writing by the party complaining . . . ." (*Id*. at 19.) Thereafter, under the provisions of the CBA, if the Grievance Committee, as defined in the CBA, fails to schedule a

---

[4] The CBA in *Chung* was entered into between the Realty Board and Local 94 was an earlier version of the CBA in this case, and was effective from January 1, 2019 to December 31, 2022. (*See Chung v. 335 Madison Avenue*, No. 21-CV-03861, Gigante Decl., Ex. 2, ECF No. 17-2.)

hearing within five days or if the Grievance Committee fails to determine an issue, the matter is referred to arbitration.[5] (*See id*. at 19-20.)

Plaintiff did not submit his wage dispute to the Grievance Committee in writing as the CBA required. Instead, he raised his dispute by telephone to his union representative, Cancel, who declined to proceed. (Pl.'s Opp'n Mem. at 8; Am. Compl. ¶¶ 49-50.) Plaintiff plainly did not exhaust the CBA's grievance procedures. In addition, Plaintiff has not shown any affirmative steps he took, or impediments he encountered, after he raised his dispute to Cancel, to initiate an arbitration, and has not made a showing that the CBA precludes an individual from arbitrating claims that a union representative declines to initiate. *See Molina*, 2021 WL 5281098, at *4 (arbitration compelled where "Plaintiff ha[d] not shown that the CBA preclude[d] [him] from arbitrating [his] claims individually . . . or that, upon attempting to arbitrate [his] claims without the Union, Plaintiff was prevented from doing so"); *see also Gildea v. BLDG Mgmt*., No. 10-CV-03347 (DAB), 2011 WL 4343464, at *6 (S.D.N.Y. Aug. 16, 2011) ("No Party has put forth evidence showing that the CBA prevents Plaintiff from effectively vindicating his statutory rights through arbitration as an individual."); *Hamzaraj v. ABM Janitorial Ne. Inc*., No. 15-CV-02030 (ER), 2016 WL 3571387, at *5 (S.D.N.Y. June 27, 2016) (noting that nothing in collective bargaining agreement prevented plaintiff from arbitrating claims). As such, Plaintiff must arbitrate his claims in accordance with the procedures set forth in the CBA.

If hereafter Plaintiff follows the procedures set forth in the CBA and is unable to vindicate his statutory claims in the arbitral forum, he may seek redress from the Court. *See Molina*, 2021

---

[5] In addition, in the case of an employee discharge, if the grievance procedure is not completed within fourteen calendar days, the matter may be referred to arbitration. (CBA at 19.)

WL 5281098, at *4 ("If Plaintiff wishes to proceed with her claims, she is directed to submit to the grievance and arbitration procedures contemplated by . . . the CBA. If Plaintiff finds that she is precluded from submitting her claims to arbitration, Plaintiff may seek further redress from this Court.").[6]

Accordingly, the Court hereby stays this action in favor of arbitration, and declines to recommend dismissal of this action at this time. The Court agrees with Plaintiff that dismissal of this proceeding is not warranted, but that a stay is the appropriate remedy. (*See* Pl.'s Opp'n Mem. at 13-15.) As noted by the Court in *Chung*, "courts in this Circuit regularly stay, rather than dismiss, complaints subject to an arbitration agreement," 2021 WL 4710483, at *4 (citation omitted), and as in *Chung*, the Court in the present case "has not been presented with a compelling reason to deviate from this practice. *See id*.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED and this case is STAYED. If Plaintiff wishes to proceed with his FLSA and NYLL claims, he is directed to submit to the grievance and arbitration procedures set forth in Articles V and VI of the CBA. If Plaintiff finds that he is precluded from submitting his claims to arbitration, he may seek further redress from the Court. Sixty days after the date of this Opinion and Order, and every sixty days

---

[6] Plaintiff cannot avoid the grievance and arbitration provisions of the CBA by means of the third claim he added to the Amended Complaint, which alleges a breach by Local 94 of the duty of fair representation. (*See* Am. Compl. ¶ 68.) Plaintiff alleges in his third claim that Local 94 breached its duty of fair representation by "prevent[ing] him from utilizing and exhausting the grievance procedure set forth in the [CBA]." (*Id*.) However, Plaintiff failed to follow the grievance procedure, since he did not submit a grievance in writing as required. (*See* CBA at 19.) Rather, Plaintiff merely spoke by telephone with his Local 94 representative. (Am. Comp. ¶ 49.) If Plaintiff exhausts his remedies in accordance with the provisions of the CBA and is unable to vindicate his rights due to some action or inaction on the part of Local 94, he may seek redress from the Court.

thereafter, the parties shall file a joint letter apprising the Court of the status of any arbitration. The parties are directed to inform the Court promptly of any resolution of the arbitration proceedings or any other event that would affect the stay of this matter.

**SO ORDERED.**

Dated:   New York, New York
         May 7, 2024

_____
STEWART D. AARON
United States Magistrate Judge